LOTTINGER; Judge.
This is a workmen’s compensation proceeding arising out of an accident which occurred on June 7, 1955, wherein the plaintiff seeks benefits at the rate of $30 per week beginning on September 21, 1955 for a period not exceeding four hundred weeks. The trial judge awarded compensation at the rate of $35 per week beginning with September 21, 1955 for the period extending through May 21, 1958 (the date of his written reasons for judgment) from which judgment the defendant has appealed. The plaintiff has answered the appeal setting forth that the award was erroneous in that it should have been at the rate of $30 per week rather than $35 per week and praying that it be increased to a period not exceeding four hundred weeks.
There is no question as to the hazardous nature of the employment or of the occurrence of the accident which happened at about 2 o’clock A. M. on the morning of *665 June 7, 1955 when plaintiff was struck on his thighs by a crank which he was using to start an air compressor. The plaintiff testified that he did very little on the remainder of his shift and on the next morning consulted Dr. R. A. Fontenot.
Dr. Fontenot, who is the “company doctor” of defendant, testified that he examined plaintiff and diagnosed his condition as “moderately severe contusion of the right thigh on the lateral side and the left thigh on medial side, Number 1; Number 2 is lumbar strain of lower back.” The doctor had x-rays taken and prescribed physical therapy and certain drugs to help circulation in the leg and to clear up the bruise. It appears that plaintiff made his next shift which was the last before his “long time off” (some four or ■five days) after which he returned to his regular duties and continued working until he resigned his job in September of 1955.
Dr. Fontenot testified that he saw the plaintiff some seventeen times, his last examination being on September 30, 1955, at which time he could find no objective signs of pain and recommended that he be seen by a specialist.
During approximately the same period of time that plaintiff was seeing Dr. Fontenot, he also was seen by Dr. C. J. Aswell, his family physician, the occasion of his visits to this gentleman being on June 25, twice in August and on September 22, 1955. His diagnosis on June 25, 1955 was “just the usual back strain at the time that he complained of some pain in his legs * * * ” When asked what treatment he had prescribed, the doctor replied: “Well we gave him, frankly I think I gave him some liniment to rub on it and some sedatives at that time, probably told him to go home and soak in hot water or something like that, I don’t remember exactly, but it wasn’t too much at the time, just routine home treatment for that type of case.”
At the instance of defendant the plaintiff was examined by Dr. James Gilly, oMho-pedic surgeon of Lafayette, on October 7, 1955. This doctor stated that x-rays showed that the plaintiff had sustained previously a mild compression fracture of the first, second and third lumbar vertebrae. However on subsequent review of the films he was of the opinion that plaintiff had sustained a contusion type injury and sprain of the lumbo sacral area. He found no objective evidence of pain and thought that corrective shoes would remedy a condition caused by plaintiff’s high- • arched feet and short heel cords which was not a result of the accident. He noted no limp or muscle spasm and his examination was negative from both a neurological and orthopedic standpoint. The doctor stated that it would be speculative to say whether or not plaintiff was disabled and that in neither of his two reports to the defendant did he state that plaintiff was disabled from performing his duties.
Dr. J. Willard Dowell, orthopedic surgeon of Baton Rouge, examined the plaintiff on March 5, 1956 at the request of the latter’s attorney. He found no objective symptoms of pain and no muscle spasm. Like Dr. Gilly, he stated that anything he might say about the plaintiff’s disability, if any, would be only speculative.
Subsequent to the trial of the case (which was on February 19, 1957) it was agreed that the plaintiff be examined by Dr. George B. Briel and Dr. William L. Meuleman, both orthopedic surgeons, and that their reports be admitted into evidence. The pertinent part of Dr. Briel’s report is as follows:
“My examination shows that he still has a mild amount of residual of a disability in his back. Whether this is a result of his injury or not I cannot say. This man has spina bifida occulta of both sacral one and sacral two and he also has a fair amount of hypertropic arthritis which ante-dated the accident] in his lower back which may account for his continued disability referable to his back. The time *666 limit is very much against the fact that this man is still suffering from a contusion or lumbo-sacral strain in his lower back. And I see no evidence in my examination to consider any disc injury. It is my opinion that his present pain is due to the instability in his lower back due to the spina bifida occulta and also probably occasionally to the hypertropic arthritis. It is most probable that both these conditions were aggravated by his accident, but the prolongation of his back symptoms I believe are due solely to these conditions.'” (Brackets and emphasis supplied.)
The pertinent part of Dr. Meuleman’s report is as follows:
“From a functional standpoint, the writer can see no good reason on this clinical examination as to how to account for the complaints which the patient offers. Certainly, there is nothing suggested that would indicate the complaints are as severe as what the patient states.
“In considering the history as to the nature of the injury the present clinical examination as well as the fact that two physicians initially found no reason to administer more than symptomatic treatment would suggest that the patient sustained nothing more than a strain of the back from which he appears to be well recovered at the present time. The writer would feel that Mr. Foret is as well now as he was prior to that injury in June 1955." (Emphasis supplied)
The above and foregoing can lead but to the conclusion that the plaintiff has failed to prove his case with that degree of certainty which the law requires. Counsel for plaintiff argues that the medical testimony is in conflict and that we should, therefore, look tó lay testimony for a solution. Our appreciation of the medical testimony is, however, that it is not in conflict, and that as it fails to substantiate plaintiff’s claim, it would be useless to review the lay testimony.
It is with reluctance that we reverse the trial judge on a question of fact; however, a reading of his reasons for judgment indicates that he evidently misinterpreted the report of Dr. Briel which he relied on heavily in reaching his conclusions.
For the reasons assigned the judgment appealed from is reversed and plaintiff’s suit is dismissed at his cost.
Judgment reversed.