MILLER, Judge ad hoc.
Simeon Singleton seeks total and permanent workmen’s compensation disability benefits and medical expenses in this direct action against Houston Fire & Casualty Insurance Company, the insurer of the Department of Highways, State of Louisiana. The hazardous nature of the employment, the occurrence of the accident in the course and scope of the employment, the compensation rate of $35 per week, and the fact that plaintiff presently is unable to do hard manual labor was either admitted or has not been seriously contested by the defendant. Defendant contends that the plaintiff has completely recovered from the effects of the accident which is the subject of this litigation and that plaintiff’s present disability is the result of pri- or accidents or of the normal degenerative effects of plaintiff’s advancing years. It was the trial court’s opinion that:
“Most of plaintiff’s symptoms are subjective and since he misled Dr. Gold on his examination, the Court cannot place much faith in plaintiff's testimony and in his statements made to Drs. Campbell and Hatchette who-attended him in his present injury.
“In view of plaintiff’s denial of any previous back injury, the Court cannot place much credence to his statements made to the doctors on the present case, and it is very questionable whether the accident herein aggravated his condition in view of the-statement of Dr. Hatchette that plaintiff was permanently and totally disabled at the time he secured employment with the Highway Commission.”
For those reasons judgment was granted in favor of the defendant.
Plaintiff is 57 years of age. The evidence indicates that in 1953 plaintiff suffered a minor injury to his back while-working for the Industrial Lumber Com *317 pany. There is no evidence that he received a settlement for this minor injury. On November 7, 1955 while plaintiff was employed by Quatre Parish Company, he “overstrained” while lifting and stacking heavy pieces of lumber and “aggravated a pre-existing arthritic condition of the lumbar spine”. This claim was settled on November 14, 1956 when the plaintiff was represented by a court-appointed attorney, and plaintiff received $3,500 in addition to the previously paid compensation which was at the rate of $19.50 per week covering the period of November 8, 1955 to November 13, 1956 together with medical expenses previously paid.
Dr. C. V. Hatchette examined and treated the plaintiff following the accident of November 8, 1955. In addition Dr. Hatchette examined and treated the plaintiff following the accident of April 15, 1958 which is the subject of this litigation. Dr. Hatchette did not examine the plaintiff subsequent to the November, 1956 settlement and prior to the April 15, 1958 accident.
Subsequent to the November, 1956 settlement, plaintiff contends that he was able to do and actually did hard manual labor. He brought witnesses who testified that they worked with the plaintiff while he was baling hay on a four or five acre tract. These witness and the plaintiff were vague about the year during which this hay crop was harvested. However, their testimony indicates that it was in the year 1956. Plaintiff denied that he worked while drawing compensation and it therefore appears that the farm work was done in 1957 rather than 1956. It is apparent from a reading of the transcript that the witnesses were not certain as to what year plaintiff worked with them while baling hay. Considering the vagueness of this testimony, it is considered of no value in determining whether or not plaintiff had performed hard manual labor subsequent to the November, 1956 settlement.
However plaintiff presented credible testimony of a witness who worked with the plaintiff from June of 1957 through September of 1957 while they were employed by the Louisiana Department of Wildlife and Fisheries. Plaintiff’s work for this department was satisfactory and consisted of among other things sawing logs in the river to clear a passageway for other boats. Plaintiff also successfully and routinely used a double bit ax in connection with this work.
On March 5, 1958 plaintiff was referred to Dr. Melvin Gold of Lake Charles, Louisiana, for a pre-employment physical to determine whether or not the Louisiana Department of Highways would employ the plaintiff. Dr. Gold after a routine physical examination passed the plaintiff for hard manual labor. However, Dr. Gold testified that, although he does not recognize the plaintiff and has no recollection of having examined the plaintiff, he is certain (because the records are in Dr. Gold’s own handwriting) that plaintiff stated that he had not suffered any prior injuries to his back. Plaintiff denies that Dr. Gold asked any questions about previous injuries. Dr. Gold did not make an X-ray examination. It was the trial court’s conclusion that plaintiff deliberately misled Dr. Gold on this important point and therefore plaintiff’s testimony as to his present subjective complaints is unworthy of belief. We are bound by the trial court’s conclusion that plaintiff deliberately misled Dr. Gold. However, we cannot conclude that plaintiff’s disability is not genuine because his subjective complaints may jiot be credible. Plaintiff’s present disability has been established by two orthopedic surgeons on the basis of multiple X-ray examinations. It is their opinion that, plaintiff cannot perform ordinary manual labor without suffering pain.
Subsequent to this March 5, 1958 examination by Dr. Gold plaintiff was employed by the Louisiana Department of Highways- and successfully did the hard manual labor assigned to him until the accident of April 15, 1958. On that date plaintiff had been helping to clear the center line for the *318 new interstate highway. He was assisting one of the highway engineers by giving him a backsight. To do this it was necessary to climb on some limbs of a fallen tree. He had on rubber boots so that he could traverse the deep mud on and along the right of way. While approximately six or eight feet above the ground he slipped and fell on some other limbs or trees which were approximately one or one and one-half feet above the ground. Plaintiff fell on his back and was unable to get up. These events were witnessed by Mr. Andrew J. Courrage, one of the engineers with the Louisiana Department of Highways. Mr. Courrage explains the accident in the following language:
“Q. Would you tell very briefly what you know about that accident? A. We were running a center line for this new interstate highway out here and Mr. Singleton was acting as rod-man and I was running a transit in order to establish the center line. As part of his duties I asked him to go giv§ me a backsight on the reference point along the center line. He had to walk across a log he mentioned and he went back and gave me the shot, and I was looking at him through the transit, he was a good distance away, I couldn’t tell too much with my naked eye. He established the point and I waved for him to come back. I looked back and saw him coming. All of a sudden he went completely from my view. I thought maybe he had stumbled and gone out of sight. When he didn’t show up in the next two min- ' utes I got worried and I ran down where he had been crossing the log and I found him tangled up in the top of a tree.
“Q. Was he standing or walking? A. He was lying down and said he wasn’t able to get up.
“Q. Had he been able to do his work as far as you know before that time? A. Yes sir, he had always done his job well.
“Q. Did his job sometimes include trimming and cutting? A. Quite frequently.”
That the plaintiff had been successfully doing hard manual labor for the Louisiana Department of Highways for several weeks prior to this accident cannot be questioned.
Defendant discontinued paying compensation after having paid same for 30 weeks when it received Dr. Hatchette’s report which was referred to in the follow-' ing testimony given by Dr. Hatchette:
“Q. Dr. Hatchette, I am referring to a letter you addressed to Mr. Russell Tritico, September 22, 1958. Do you recall inserting this sentence into this letter or do you recall dictating this sentence:
“ ‘Granted that Mr. Singleton received a lumbosacral strain at the time of his injury, this strain is now improved to the point that he has any muscular strain as a result of the accident but the arthritic changes are quite pronounced and the postural ' changes in the lumbar spine is such that this man is predisposed to any type of straining condition which might be indulged in insofar as the back is concerned.
“ ‘At this time I feel that he is about recovered insofar as his lumbosacral strain is concerned but the residuals which remain are confined to the arthritic changes which were present long before his accident.’
“Do you recall that, Doctor? A. Yes sir.
“Q. Can I interpret or draw from that that in your opinion whatever aggravation Mr. Singleton suffered as a result of the accident of April 15, 1958, that that aggravation or whatever the aggravation caused has disappeared and Mr. Singleton is now in the same condition he was prior to April *319 of ’58? A. I felt that he was at that time.
“Q. You feel the same way at the present time or from the last examination ? A. I suppose so unless the man has had other twisting injuries of his hack and that sort of thing. I think most anything would cause an aggravation of this man’s back pain. If he would turn over in bed he would probably get it.
“Q. Do you think any disability which he may now suffer from is directly attributable to the injury of April IS, 1958? A. I have no choice. Mr. Singleton stated that he was working at the time when he fell out of the tree and he got a severe back pain as a result of that. I feel that the back pain that he received was possibly due to some muscular or other soft tissue injuries to his back but I don’t see how he could have done that without aggravating this arthritis that he had.
“Q. Do you think his condition pri- or to April of 1958 was greatly changed, that is, the condition of his backbone or spine was greatly changed by the accident of April of 1958? A. I couldn’t see any difference. I x-rayed him again and compared the x-rays with the previous ones, ’55 and ’56. I couldn’t find a great deal of difference as far as the arthritis was concerned. There might have been a little increase in arthritic changes.”
On the basis of this testimony, defendant contends that plaintiff is no more disabled at this time than he was prior to the accident. Defendant’s counsel urges in his supplemental brief that:
“In view of the fact that Dr. Hat-chette states that the man was, prior to April of 1958, totally and permanently disabled, but on a showing by the plaintiff that he was able to work, we must necessarily follow along with that and say that while Dr. Hatchette’s examination may reveal to him certain facts which lead him to believe that the man is disabled still his condition has not changed from the condition prior to April of 1958 and that the man is able to work and that the injury he might have suffered contributed nothing toward his disability.”
To get a complete picture of Dr. Hat-chette’s opinion we quote from other parts of his testimony:
“Q. As a result of the last examination, Doctor, did you have an opinion and do you have now an opinion as to whether or not Mr. Singleton was after April 15th and now disabled insofar as doing manual labor? A. Yes, sir, he is disabled.
“Q. In your earlier treatment and examination of Mr. Singleton did you have an opinion as of the last time you had seen him as a result of another episode in ’55 as to whether or not he was disabled? A. He was disabled then.
“Q. Is it at all possible that from the time which you saw him in ’55 or about that time and the time that you later saw him following an injury in April of ’58 that he could have done manual labor? A. I suppose so.
“Q. Is it possible that the condition which he had in ’55 would have reached some type of dormant state to where he would have been able to do this work without severe pain or discomfort? A. I can’t state that. He probably would have had discomfort in my opinion. I don’t see how he could do the work of a normal man with the back he had in ’55 and ’56 and I cannot understand how he could return to work of an arduous nature with that type of back without discomfort.
“Q. What is his back condition? A. He has an extremely severe osteo *320 arthritis involving his entire spinal cord.
“Q. If he had gone to work for a period of a year or so and done various jobs, cutting logs, baling hay, things of that nature, and if he had another accident such as falling out of a tree or falling four, five or six feet on his back, could that have renewed or aggravated any condition he had that might have become somewhat dormant? A. Yes.
“The Court: When did you examine him after April 15th, Doctor? A. The first time I examined this man—
“The Court: After April 15, 1958, that is when he was suppose to have had the second accident. A. That was June 10, 1958. The last time was September 17th.
“Q. From the history which you took in June is there anything in your file which indicates he had been receiving treatment or examination from any other doctor, some Dr. Buck, does your record show anything like that? A. No sir.
“Q. Did you notice as a result of your examination in June any aggravation of any arthritic condition in his back? A. Yes, Mr. Singleton had very limited motions of his back and as a matter of fact he was completely disabled in my opinion, as far as his back was concerned. This man was in considerable pain with limited motions.

“Q. The fact that he was at work cutting, trimming trees, he cut logs, was able to do that for a period of time in excess of two or three or four —maybe as long as a year that he did those things and then he falls out of a tree four, five or six feet, it is not unreasonable to believe that his aggravated condition as far as the arthritis is concerned could have been triggered by that episode? A. I am sure it could have been.”
Dr. Edmond C. Campbell examined the plaintiff on August 11, 1958, and November 14, 1958, at the request of the defendant. The defendant did not call Dr. Campbell but did introduce in evidence Dr. Campbell’s three reports dated August 8, 1958 (obviously in error because the examination was made on August 11, 1958) November 17, 1958, and March 10, 1959. In Dr. Campbell’s first report he stated:
“I feel that this patient is not suffering severe symptoms at this time, though it cannot be said that he does not suffer some degree of low back pain or that he can perform any type of work without low back pain. However, I feel that he would be improved by increasing his activities and probably by the administration of some salicylate drug. While this patient can have symptoms without having had any injury, and while I do not think that he is seriously disabled at the present time, it cannot be stated that his present complaints are not related to his injury of April 15, 1958. I feel that as near as can be stated that he should be relieved of any aggravation of his pre-existing degenerative condition in the low back, within six months from the time of the injury. I feel that he should not suffer any permanent disability, because of this injury. The patient should by that time be able to perform work with a locating crew, if such does not involve strenuous work, and certainly should be able to perform work as a roadway inspector by that time, should such work be available.” (Emphasis added.)
On November 17th Dr. Campbell reported that he examined plaintiff again on November 14th and that:
“I feel that this patient is unable at this time to do any manual labor. As near as can be stated by the appearance of his x-rays, even without Dr. Hat- *321 chette’s statement that the x-ray appearance is no different than when treated in 1955 and 1956, the degenerative changes in this man’s back are such that he is not able to do any manual labor, and was not able to do any manual labor prior to his employment in April, 1958. (Emphasis added.)

“In respect to your questions in letter of November 3, 1958, I feel that this man was unemployable at the time he went to work for the Louisiana Highway Department. Whether his condition is approximately the same at this moment, or worse, it is difficult for me to state. In other words, it cannot be stated that he is not suffering more symptoms now than he was prior to the injury of April 15, 1958. I feel, however, that he was disabled for the performance of any manual work at this time, just as he is at the present time.” (Emphasis added.)
By letter dated March 10th Dr. Campbell reported:
“I feel * * * that with the' changes which are present on x-ray, in the low back, that the patient was probably significantly disabled before his injury of April, 1958. The injury of April, 1958 was certainly a relatively insignificant one. Any possible aggravation of the pre-existing degenerative condition, should theoretically be relieved within six to twelve months following such injury. It is approaching twelve months following injury at this time.” (Emphasis added.)
This Court cannot agree with Dr. Campbell’s conclusion that this accident was a relatively insignificant one. A fall of several feet causing the plaintiff to land on his back on some tree limbs and which renders him unable to get up by his own activity seems quite significant. And when you add the condition that plaintiff is certainly predisposed to back injuries it seems to be a most significant accident.
To summarize the medical testimony, it is the doctors’ opinion that plaintiff cannot now perform hard manual labor; that plaintiff’s present disability is due mainly to his arthritis which predates the April 15, 1958 accident; that they do not deny that plaintiff is suffering more symptoms now than he was prior to the injury of April 15, 1958; that it is certain that the accident suffered by plaintiff did aggravate plaintiff’s arthritis.
It is a well-settled principle of law in workmen’s compensation cases that it is immaterial whether or not the plaintiff was suffering from a latent defect at the time of his employment insofar as his right to compensation is concerned. In Section 232 of Mr. Wex S. Malone’s book entitled Louisiana Workmen’s Compensation, it is stated:
“The courts have firmly established the principle that the employer must take the worker as he finds him. The worker who is abnormally susceptible to disability from an accident is entitled to the full protection of the compensation statute, even though the same accident would have caused little or no harm to a healthy worker. It is not important that the diseased or weakened condition might alone have eventually produced disability or death.” See also Johnson v. Calcasieu Paper Company, La.App., 95 So. 2d 659, at page 665.
In the instant case plaintiff established that he was able to perform hard manual labor prior to the date of the accident. As has been noted above the fact that plaintiff did successfully and routinely perform hard manual labor while employed by the Louisiana Department of Highways is not subject to question. Therefore, the medical opinion that plaintiff was disabled from performing hard manual labor prior to this accident of April 15, 1958 is simply incorrect. The fact is plaintiff did perform hard manual *322 labor to the entire satisfaction of his employers. There is nothing to suggest that plaintiff was in any way shirking his duties or was unable to perform his duties. The medical testimony preponderates that plaintiff was suffering from an extremely severe osteoarthritis involving his entire spinal cord prior to his employment by the Louisiana Department of Highways. However it is also clear that this condition was dormant for several months prior to the accident. This was established by proof that plaintiff successfully performed hard manual labor and that he was passed for hard manual labor after a pre-employment physical examination. It has also been established beyond question that plaintiff suffered a severe accident while employed by the Louisiana Department of Highways and that since that accident plaintiff has been totally and permanently disabled from performing hard manual labor.
This case is similar to the case of Peavy v. Calcasieu Paper Company, La.App., 70 So.2d 755, 756. In the Peavy case the defendant argued that: “If plaintiff was disabled, such disability arose from a preexisting arthritic condition of his back, which was not aggravated by any event while in the employment of defendant, and that plaintiff withheld from defendant information as to his pre-existing back condition.” In the Peavy case Dr. Eggers, orthopedic surgeon, testified that he examined plaintiff on June 29, 1949 in connection with a 1948 injury and he also examined plaintiff in March of 1952 in connection with the 1951 injury. He testified that the complaints which the plaintiff made to him in March of 1952 were basically the same as the complaints in June of 1949. His conclusion was that plaintiff’s condition was due to the arthritic changes in the vertebra accompanied with some anticipative psychiatric attitude. In the Pea-vy case the Court concluded that since the plaintiff had performed several jobs requiring heavy manual labor subsequent to the 1948 injury and prior to the 1951 injury, it was established that plaintiff had recovered. This is the conclusion this Court has reached in the instant case.
Also somewhat in point is the case of Weeks v. Consolidated Underwriters, La.App., 58 So.2d 289. In that case the plaintiff had suffered four previous injuries. The X-ray examination indicated that plaintiff was still suffering from these old injuries. The Court determined that plaintiff was not permanently disabled prior to the fifth accident because of the proof that plaintiff had worked fairly regularly for several years prior to the last injury.
Defendant relies on the case of Foret v. Cabot Carbon Company, La.App., 108 So.2d 664. In that case the Appellate Court concluded that plaintiff had completely recovered from the accident which was the subject of that dispute and that any present complaints by the plaintiff were due solely to his pre-existing back condition. The Foret case is distinguished from the instant case in that here all the doctors are convinced that the plaintiff is totally and permanently disabled. In the Foret case most of the medical opinion was to the effect that there were no objective symptoms to indicate that plaintiff was in any way disabled. Only one physician found “a mild amount of residual of a disability in his back.” It was that physician’s opinion that this mild residual was due to the instability in plaintiff’s lower back and to hypertropic arthritis. In the Foret case the Appellate Court did not consider whether or not plaintiff had been successfully performing hard manual labor prior to the injury.
Accordingly it is ordered, adjudged and decreed that the judgment appealed from be annulled and reversed and that there now be judgment in favor of the plaintiff, Simeon Singleton, and against the defendant, Houston Fire & Casualty Insurance Company, granting to the plaintiff compensation at the rate of $35 per week beginning April 15, 1958, with interest on-each past-due installment at the rate of' 5 per cent per annum from the due date *323 until paid, subject to any credits for compensation payments made by the defendant herein. Pursuant to the prayer in the plaintiff’s petition, his right is reserved to claim medical expenses incurred or to be incurred as a result of the injuries herein, within the statutory limit of $2,500, less credit for any medical expenditures made by the defendant. The defendant is cast with all costs of these proceedings, including expert fees.
Reversed and rendered.